IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARK KOSHNICK, | § | |
|     *Plaintiff,* | § | CIVIL ACTION NO. 1:17-CV-00852 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| CITY OF LAKEWAY AND | § | |
| THE CITY OF BEE CAVE, | § | |
|     *Defendants.* | § | |

---

**PLAINTIFF'S COMBINED RESPONSE TO
THE CITY OF LAKEWAY'S AND THE CITY OF BEE CAVE'S
MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

---

**Brian C. Steward**
State Bar No. 19201100
Bbrian@krwlawyers.com
**KETTERMAN ROWLAND & WESTLUND**
16500 San Pedro, Suite 302
San Antonio, Texas 78232
(210) 490-7402
(210) 490-8372 - fax

**Thad Spalding**
State Bar No. 00791708
tspalding@kdplawfirm.com
**KELLY, DURHAM & PITTARD, LLP**
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000
(214) 946-8433 - fax

**ATTORNEYS FOR PLAINTIFF**

i

Plaintiff Mark Koshnick ("Koshnick") files this combined Response to Defendant City of Lakeway's Motion to Dismiss (Doc. 8) and Defendant City of Bee Cave's Motion to Dismiss (Doc. 9).[1]  The Cities' motions should be denied for the following reasons:

## I.  INTRODUCTION

In the early morning on September 12, 2015, Mark Koshnick had just finished showering in an upstairs bathroom of his home and was preparing to go to sleep when officers from the City of Lakeway and the City of Bee Cave (the "Cities") forcibly entered his home, including using a battering ram to break down the front door. (Pl.'s Orig. Complaint at ¶¶ 8–9) (Doc. 1). Koshnick ran to the top of his stairs to see what was unfolding, and as he stood there, officers grabbed Koshnick and dragged him down the stairs, ultimately handcuffing him and placing him in a squad car. (*Id.* at ¶9). Although City of Lakeway police had visited Koshnick's home earlier to investigate a domestic situation in which they suspected Koshnick had been hurt, Koshnick confirmed that he and the home's other occupants were safe, at which point the City of Lakeway police left, obviously satisfied that the situation was under control. (*Id.* at ¶¶ 8,11). Nevertheless, officers from both Cities returned, swarmed Koshnick's home without warning, and dragged Koshnick down his stairs and out of his home, using force where none was necessary given that he was unarmed nonconfrontational, and was not resisting arrest. (*Id.* at ¶ 9).

---

[1] Because the City of Lakeway's motion and the City of Bee Cave's motion raise the same arguments and commit the same errors of fact and law, and are presented with only slight differences, Koshnick responds to both herein.

These police officers' excessive use of force violated Koshnick's constitutional rights—including but not limited to depriving him of the right to bodily integrity and liberty without due process of law—which physically, mentally, and emotionally injured Koshnick. (*Id.* at ¶¶ 22, 24–28, 30–34). The Cities' respective policymakers, the City of Lakeway Police Department and the City of Bee Cave Police Department, made that conduct possible through their policies and procedures. (*Id.*). They acted with deliberate indifference to the unreasonable risk that something like this could happen to Koshnick and others. (*Id.*). Further, the Cities' respective police departments ratified the conduct of these officers by failing to discipline officers based on this conduct and other complaints.

Koshnick filed suit against the Cities on September 1, 2017, and the Cities each filed a motion to dismiss Koshnick's complaint ["Complaint"] under Federal Rule of Civil Procedure 12(b)(6), arguing that:

(1)    Koshnick "clearly failed to allege any facts in his Complaint that could support a claim" against them (Doc. 9 at 1), including arguing that no officer violated the Constitution, thus precluding municipal liability. (Doc. 8 at 1);

(2)    that, although Koshnick filed his federal claim within the applicable two-year limitations period, he should have further complied with Texas, not federal, rules for service of process (Doc. 8 at 9; Doc. 9 at 10); and

(3)    the officers' use of force could not have been excessive because the extent of Koshnick's injuries was not severe enough. (Doc. 8 at 8–10; Doc. 9 at 11).

As will be demonstrated in more detail below, these arguments are without merit, and the Cities' motions should be denied.

## II.     ARGUMENT & AUTHORITIES

**A.     Standard and scope applicable to the Cities' Rule 12(b)(6) motion.**

Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 231 (5th Cir. 2009). A complaint will not be dismissed merely because it contains an imperfect statement of the legal theory supporting the claim asserted. *Johnson v. City of Shelby,* 135 S. Ct. 346, 346 (2014). Federal pleading rules simply call for "a short and plain statement of the claim showing that the pleading is entitled to relief." *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

A court must first distill well-pleaded factual allegations, whose truth is presumed, from any unsupported legal conclusions, whose truth cannot be assumed. *See, e.g., Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (Well-pleaded facts are to be viewed "in the light most favorable to the plaintiff."). A complaint fails if it offers only "naked assertions devoid of further factual enhancement." *Id.* at 678. Importantly, the Court should not evaluate the merits of the allegation, but satisfy itself only that the plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Importantly here, "[a] district court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6)." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016); *Great Plains*

*Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Thus, any basis for dismissing Koshnick's claims that relies on facts not shown on the face of the complaint is misplaced.

**B.     As a threshold matter, Koshnick's claims were timely filed.**

The affirmative defense of limitations can be raised in a 12(b)(6) motion to dismiss. *Lucky v. Haynes*, Civ. No. 3:14–CV–2915–L, 2015 WL 4525689, at *3 (N.D. Tex. 2015). However, a motion to dismiss on a statute of limitations defense may only be granted where it is evident from the complaint that the action is time-barred. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Here, there is no question that Koshnick's federal claim was filed within the applicable two-year limitations period. The Cities do not dispute this fact. (Lakeway Mot. at 8; Bee Cave Mot. at 10). Instead, the Cities urge this Court to apply a provision for service under Texas law that, even though Koshnick timely filed his complaint in accordance with federal rules, would require him to show he exercised due diligence in effecting service. (*Id.*). However, that state law requirement does not apply to Koshnick's federal claim and, even if it does, whether service was effected with due diligence is a matter outside the four corners of the complaint.

In a federal action under 42 U.S.C. § 1983 ("Section 1983"), state law determines the length of the statute of limitations. *Ponder v. City of Denton, Tex.*, Civ. No. 4:13-CV-17, 2014 WL 5364026, at *2–3 (E.D. Tex. Oct. 21, 2014); *Jackson v. Duke*, 259 F.2d 3, 6 (5th Cir. 1958). The Cities argue that Texas' due diligence service rule should apply to the filing

4

requirements for a federal claim, citing a state court case that does not address a federal claim filed in federal court—the circumstances involved here—but instead concerns a state claim filed in state court. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009) (Lakeway Mot. at 8; Bee Cave Mot. at 10). The Fifth Circuit has applied this rule in the context of Texas claims brought in federal court. *Rogers v. Dunham*, 478 Fed. Appx. 875, 877–78 (5th Cir. 2012) (per curiam); *Jackson v. Duke*, 259 F.2d 3, 6 (5th Cir. 1958).

However, the United States Supreme Court has expressly refused to "require that when a federal court borrows a statute of limitations to apply to a federal cause of action, the statute of limitation's provisions for service must necessarily also be followed." *West v. Conrail*, 481 U.S. 35, 39 (1987); *see also Gonzales v. Wyatt*, 157 F.3d 1016, 1021 n.1 (5th Cir. 1998) (concluding that federal case law excluding other federal claims from Texas' due diligence rule "would apply to any cause of action based on federal law, presumably including federal court section 1983 actions."). And although one federal court in Texas court has applied the rule to a Section 1983 claim,[2] federal courts in Texas have more often held that "the Texas rule requiring due diligence in service [] does not apply to Section 1983 claims filed in federal court." *Vela v. City of Austin, Tex.*, Civ. No. 1-15-CV-1015-RP, 2016 WL 1583676, at *3 (W.D. Tex. 2016); *see also Casas v. City of Fort Wort Police Dept.*, Civ. No. 4:15-CV-872-O, 2017 WL 3638321, at *4 (N.D. Tex. May 17, 2017); *Scott v. Cypress Creek Emergency Med. Srvs.*, Civ. No. H-06-1436, 2007 WL 2209268, at *6 (S.D. Tex. July 27, 2007).

---

[2] *See S.D. Tex. Mcallen Div., Oscar Daniel Granados v. Brooks*, Civ. No. 7:15-CV-256, 2015 WL 8618716, at *3 (S.D. Tex. 2015).

If a complaint is filed timely, then the claim is not barred. *Id.*; FED. R. CIV. P. 3; *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998) (holding that the district court erred in relying on Texas' due diligence requirement in addition to the statute of limitations for the plaintiff's federal civil claim). In this case, because Koshnick's Section 1983 claim was undisputedly filed within Texas' two-year limitations period for personal-injury torts, the Cities' motion in this regard must be denied. *Ponder*, 2014 WL 5364026, at *2–3.

But, assuming that Texas's due diligence in service rule actually applied here, the nature of that affirmative defense is not one that can be considered or ruled on based solely on the complaint.  Rather, by its very nature, the affirmative defense requires that evidence *outside the four corners of the complaint* be considered.  After all, if this affirmative defense even applies here, it will require affidavit proof of the efforts taken to serve the two Cities after the complaint was filed.  Such evidence is not appropriate in the Rule 12(b)(6) context and therefore the Cities' motion on this ground must be denied.

## C.   Koshnick need not prove liability or establish that he prevails on his claims in order to state a claim for Rule 12(b)(6) purposes.

Importantly, there is a difference between the facts that must be *proven* to support municipal liability, and the facts necessary to survive a Rule 12(b)(6) motion.  After all, so long as the complaint contains sufficient factual allegations, a court should not grant a motion to dismiss simply because of an imperfect statement of the legal theory supporting the claim.  *Groden v. City of Dallas,* 826 F.3d 280, 284 (5th Cir. 2016); *see also Balle v. Nueces Cty., Tex.*, Civ. No. 16-40789, 2017 WL 2590512, at *4 (5th Cir. June 15, 2017).  Despite Lakeway's contention that Koshnick's complaint fails because it "does not

adequately identify" a policymaker, a policy, or a custom (Lakeway Mot. at 5–6), Koshnick is not required at the dismissal stage to identify a specific policy making official or the specific policy that caused the constitutional violation against him.

> 1.   **Specific facts proving a policy are not necessary to give a municipality fair notice of allegations from which misconduct can be inferred.**

At the outset, the Cities' recitation of the federal pleading standard is incomplete as applied to municipal liability claims. (*See* Lakeway Mot. at 2–3; Bee Cave Mot. at 2–3). In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011). At the Rule 12(b)(6) dismissal stage, when notice is the overriding concern, only minimal allegations should be required, and because a plaintiff will generally not have access to specific municipal policies, allegations need not specify what the policy is. *Id.* at 842–43.

In seeking to articulate a standard that provides fair notice to defendant municipalities, and to reconcile U.S. Supreme Court opinions that created some confusion as to the proper pleading standard for municipal liability claims,[3] the court in *Thomas* described the level of pleading necessary:

---

[3] In *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* the United States Supreme Court rejected a heightened pleading standard that the Fifth Circuit had applied to Section 1983 claims against municipalities. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Meanwhile, in a general context, the Court in *Twombly* and *Iqbal* held that claims must be plausible on their face, meaning "the pleaded factual content allows the court to draw the reasonable inference that the defendant *is liable* for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). This created confusion among courts considering municipal liability

Allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy. Those types of details, or any other minimal elaboration a plaintiff can provide, help to "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests," *Twombly,* 550 U.S. at 555 n. 3, 127 S. Ct. 1955, and also to "permit the court to infer more than the mere possibility of misconduct." *Iqbal,* 129 S. Ct. at 1950.

*Thomas,* 800 F. Supp. 2d at 843–44 (footnotes omitted).  As the court in *Thomas* explained:

This balance, requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a policy, is in line with the approach of other courts post-*Iqbal*.  Where a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability, and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."  *Leatherman,* 507 U.S. at 168-69, 113 S. Ct. 1160.

*Id.* at 844–45 (footnote omitted); *see also Schaefer v. Whitted,* 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015).

> **2.**     **The identity of policymaking officials is a question of state law, and a complaint need only allege facts showing that a policy for which the municipality is arguably liable.**

Recently, the Fifth Circuit in *Groden v. City of Dallas, Texas* reversed a district court that had dismissed the plaintiff's complaint because he "did not plead the identity of the policymaker of the alleged city policy." *Groden,* 826 F.3d at 283.   The Fifth Circuit

---

claims, where a plaintiff is unlikely to have access to the specific policies that would support plausible liability against a municipal entity. *Thomas*, 800 F. Supp. 2d at 842.

emphasized that the identity of the policymaker is a question of state law,[4] and a plaintiff need not supply an answer to a legal question in her complaint—it need not be pled. *Id.* at 284–85 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (plurality opinion)). "[T]he complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Id.* at 284; *see also Balle*, 2017 WL 2590512, at *4.

Koshnick has alleged facts which implicate the legal elements of a claim against each of the Cities, and state law will properly enable the Court to ascertain the identify of the policymaker responsible for the policies in question. Koshnick alleged that the Cities: enacted policies that enabled the constitutionally injurious conduct; failed to enforce policies that would have prevented this conduct; or ratified the conduct by failing to condemn it. (Complaint at ¶¶ 12–13; 23–36). Thus, Koshnick satisfied federal pleading requirements with regard to his *Monell* claim.

The Cities' characterization of Koshnick's Complaint as "quite clearly [] presented as an attempt to use a *respondeat superior* approach to establishing liability against the City" is simply incorrect. (Lakeway Mot. at 5; see also Bee Cave Mot. at 10). A plaintiff asserting a Section 1983 claim does not rely on vicarious liability (*respondeat superior*) because it is the "official policy or custom" of a municipality that is alleged to have caused

---

[4] State law designates policymakers through state statutes, and through local ordinances and regulations. *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 550 (5th Cir. 2008) (consulting the Texas Government Code to determine the policymaker for Texas cities); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (consulting the Texas Educational Code to determine the policymaker for Texas school districts); *Praprotnik*, 485 U.S. at 125 (local ordinances and regulations.).

his constitutional deprivation.  This is precisely what Koshnick has alleged and, as such, the Cities' motions should be denied.  (Lakeway Mot. at 3; *see generally* Complaint).

**D.**   **Koshnick alleged facts giving rise to the reasonable inference that the Cities caused his constitutional injuries.**

A municipality may be sued under Section 1983 "if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Praprotnik*, 485 U.S. at 121).[5] Even where an officially adopted and promulgated policy does not appear to authorize the conduct at issue, a municipality is still subject to a 1983 claim that alleges "a persistent, widespread practice of city officials or employees, which . . . is so common and well settled as to constitute a custom that fairly represents municipal policy." *Thomas v. City of Galveston, Tex.,* 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011) (quoting *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (citation omitted)).

**1.**   **Koshnick's injuries need not reach a certain severity for the police officers' use of force to be excessive.**

The Cities contend that Koshnick can show no municipal liability for policies that enable the Cities' police officers to use excessive force because "the Complaint establishes no more than a de minimus injury for which there may be no recovery." [Lakeway Mot. at 8; Bee Cave Mot. at 11). The Cities cite the Fifth Circuit's previous holding that "[t]o

---

[5] Under a *Monell* claim, a municipality is subject to liability when the plaintiff shows (1) an official policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right.  *Peterson v. City of Fort Worth,* 588 F.3d 838, 847 (5th Cir. 2009); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).

state a claim for excessive use of force, the plaintiff's asserted injury must be more than de minimis." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

"Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). The United States Supreme Court in *Gaddy* expressly rejected using the extent of injury as the barometer of whether a plaintiff has stated a claim for the excessive use of force: "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* While the lower court determined that the plaintiff failed to state a claim because "he simply has not alleged that he suffered anything more than de minimus [sic] injury," the Supreme Court's review of that decision was simple—"No." *Id.* The force directed at a plaintiff is not itself *de minimis* when it causes a discernible injury. *Id.*; *Hudson v. McMillian*, 929 F.2d 1014, 1015 (1990) (per curiam).[6]

Accordingly, the Lakeway and Bee Cave police officers' use of force could not cease to be excessive merely by declaring that Koshnick's injuries should have been more severe. Koshnick's injuries were—and are—discernible, and the force that Koshnick alleged caused such injury was excessive. The Complaint alleged: "As a direct result of

---

[6] Koshnick has alleged that the Cities' actions violated his substantive due process rights through the Fourteenth Amendment of the U.S. Constitution, and although these cases discuss excessive use of force in the context of Eighth Amendment violations, the same reasoning applies to excessive use of force claims generally. *U.S. v. Daniels*, 281 F.3d 168, 179 (5th Cir. 2002) ("[A] claim of excessive force by a law enforcement officer is correctly examined under the same standard regardless whether the claim arises under the Eighth Amendment or the Fourteenth Amendment.") (citing *Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir.1993)). Thus, while different standards govern whether the manner in which force was applied under the circumstances violated the relevant constitutional provision, the inquiry in excessive force claims is "not whether a certain quantum of injury was sustained." *Gaddy*, 559 U.S. at 37.

the physical abuses, Plaintiff suffered, and continues to suffer, serious mental, emotional, and physical injuries." (Complaint at ¶ 34). These physical abuses occurred, as alleged, when police officers dragged Koshnick down a flight of stairs, subduing him before placing him in handcuffs. (Complaint at ¶¶ 9, 11). Thus, Koshnick has alleged discernible injuries sufficient to state a claim.

### 2.     Koshnick's Complaint sufficiently alleges that his constitutional injuries resulted from the Cities' official policies, customs, or practices.

Municipal liability results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc). Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. *Id.* But a policy may also be evidenced by custom, that is: a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Id.* Even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result. *Piotrowsky v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing and quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)). This policy must also be the moving force behind the violation. *Monell*, 436 U.S. at 694.

Here, Koshnick's Complaint alleges among other things that the unlawful conduct of the Lakeway and Bee Cave police officers included dragging Koshnick down a flight of stairs without warning while:

- Koshnick was "not a suspect;"

- Koshnick was himself "the alleged victim of the initial domestic disturbance call to the police dispatcher;"

- Koshnick was "compliant and non-confrontational;"

- Koshnick "did not make any gestures or efforts to evade or escape the police officers;"

- Koshnick "did not resist the commands of the officers and he did not have any device or instrumentality in his hands which might have been considered a weapon;"

- Koshnick "did not actively or passively resist arrest;"

- Koshnick, though handcuffed and placed in a squad car, "was never arrested;" and

- Using excessive force and escalating the situation "beyond the use of verbal orders or controls" without objective or subjective reason to do so.

(Complaint at ¶¶ 9, 11).[7] It was this conduct that Koshnick alleges occurred as a result of persistent, widespread practices so common and well-settled as to constitute a custom that fairly represents the Cities' written and unwritten policies and evidences a deliberate indifference to the harms people like Koshnick were likely to suffer:

> There is a pattern of misconduct originating from a failure to hire, train, discipline or supervise the police officers of the City of Lakeway Police Department and the City of Bee Cave Police Department. The practices of the Officers, while not authorized by officially adopted and promulgated policy and/or procedure, are so common and well settled as to constitute a

---

[7] It is worth noting that Bee Cave's Motion appears to justify what may appear as "deliberate indifference" in failing to adopt a policy by arguing that the police officers' entry into the home was justified. (Bee Cave Mot. at 9–10). First, it is not the officers' entry into his home that Koshnick alleges was excessive use of force. Second, as explained further below, Koshnick did not allege a "failure to adopt a policy" as a basis for his claim. Accordingly, Koshnick disputes these misrepresentations.

custom that fairly represents the policies of the respective cities over the past five years.

The conduct described herein is strongly indicative of a situation of endemic malfeasance at the administrative levels of the City of Lakeway and the City of Bee Cave as well as the respective police departments. The customs, patterns, policies (written and unwritten) show the Defendants' calculated and callous disregard for the Constitutional rights and privileges guaranteed to all United States Citizens, including the Plaintiff.

(Complaint at ¶¶15–16). Thus, the Complaint alleges that multiple officials in two Cities' police departments were involved in the misconduct and specifies the topic of the challenged policy. Such allegations provide sufficient detail to give the Cities fair notice of the nature of the claim against them and the grounds on which the claim rests, while permitting the court to "infer more than the mere possibility of misconduct." *Thomas*, 800 F. Supp. 2d at 843–44 (quoting *Iqbal*, 129 S. Ct. at 1950); *Twombly*, 550 U.S. at 555 n. 3).

### 3.   Koshnick's pleading sufficiently alleges that his injuries originated from the Cities' failures in hiring, training, and supervising its police officers.

In addition to sufficiently identifying an official policy, custom or practice, Plaintiff also alleges a claim for wrongful hiring, supervision, training, and discipline. Failing to train municipal employees can also constitute a "policy" of the municipality. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Such a policy may be evident when the officers' assigned duties make "the need for more or different training [] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. For instance, because "city policymakers know to a moral certainty" that arresting fleeing felons is part of police officers' assigned duties, meaning that a

failure to train them on the "constitutional limits of the use of deadly force" shows "deliberate indifference." *Id.* at 390 n.10. Alternately, if officers repeatedly violate constitutional rights, the need for further training becomes "plainly obvious to the city policymakers," who are deliberately indifferent when they fail to do so. *Id.*

The City of Bee Cave acknowledges that "when a failure to train an officer actually causes an injury, [it may] in certain very limited circumstances, fairly be said to represent a policy for which a governmental entity may be held responsible." (Bee Cave Mot. at 5) (citing *City of Canton*, 489 U.S. at 390). This is precisely what the Complaint alleges.

Koshnick asserts that, in addition to failed policies, the Cities' inadequate hiring, training, and supervision of its police officers led officers from two Cities' police departments to drag Koshnick down the stairs and subdue him forcibly, when he posed them no threat. (Complaint at ¶¶ 9, 11, 15, 17–18, 27, 33). Under the circumstances, Koshnick alleges that the officers had no objective or subjective reason to use excessive force or escalate the situation "beyond the use of verbal orders or controls." (Complaint at ¶ 11). According to Koshnick, this misconduct on the part of both Cities' officers demonstrates that the Cities are "guilty of wrongful hiring, training, supervising, disciplining, and maintaining public servants of quality and character," a practice he claims is so common as to be "endemic." (Complaint at ¶¶ 15–18). It is axiomatic that responding to domestic disputes, like arresting fleeing felons, is part of police officers' duties, which the Cities should know "to a moral certainty." *City of Canton*, 489 U.S. at 390 n.10. Failing to train them on the constitutional limits of the use of force while carrying out such duties evidences "deliberate indifference" constituting city policy.

Furthermore, the City of Lakeway does not specifically dispute Koshnick's claims that Lakeway failed to properly train, supervise, or hire its police officers, relying solely on its mischaracterization of the Complaint as asserting these claims under a vicarious liability theory.[8]  However, while the City of Bee Cave does contest Koshnick's improper hiring, training, and supervision claim, it makes two fundamental errors.

First, Bee Cave relies on evidence impermissible to consider in the Rule 12(b)(6) context to argue that the Texas Commission on Law Enforcement ("TCOLE") standards governing municipalities' police officer training and supervision demonstrates that Bee Cave's officers received proper training. (Bee Cave Mot. at 6–8). Such evidence is not proper at the Rule 12(b)(6) dismissal stage. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). Therefore, the Court may not, as Bee Cave urges, "accept as a matter of judicial notice" any of the TCOLE standards for purposes of the Cities' motions to dismiss Koshnick's claims.

Second, Bee Cave attempts to hold the Complaint to a standard beyond what applies at the Rule 12(b)(6) stage, measuring the allegations against what a plaintiff must demonstrate "to prevail on a failure to train theory." (Bee Cave Mot. at 5); *Groden v. City of Dallas,* 826 F.3d 280, 284 (5th Cir. 2016). Such evaluation may be proper in a summary judgment motion—but not in seeking a dismissal for failure to state a plausible claim under the federal rules. Moreover, specifying precisely which facets of the Cities' training program are deficient is not required at the pleading stage, as it is exceedingly rare that

---

[8] As shown above, none of the allegations in Koshnick's Complaint asserts or relies on vicarious liability (*respondeat superior*) to charge the Cities with Section 1983 liability.

a plaintiff will have access to (or personal knowledge of) such training procedures prior to discovery.  *Thomas v. City of Galveston, Tex.,* 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011).

Ultimately, Koshnick's Complaint satisfies the pleading standard which this Rule 12(b)(6) motion to dismiss demands, giving the Cities fair notice of the grounds alleged for a claim against them under Section 1983 for failing to properly hire, train, or supervise their police officers.

**4.    Koshnick's pleading sufficiently alleges that the Cities ratified the officers' conduct.**

"[W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  While a ratification theory is generally recognized in only "the most extreme factual situations," that factual situation exists here. *See World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (noting that theory applies where "subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law").

In addition to alleging that the police officers acted in accordance with the Cities' policies and that the Cities' failure to properly train, supervise, and hire capable police offers directly led to Koshnick's injuries, the Complaint takes further exception to the Cities' failure to discipline the officers for their conduct. (Complaint at ¶¶ 12, 13).

Meanwhile, the officers were in a powerful position over Koshnick as they bashed his front door with a battering ram and broke into his back door, taking Koshnick by surprise while he was in a vulnerable position, having just finished a shower and being unarmed without any way to defend himself. (Complaint at ¶¶9, 25–26). By failing to correct this behavior, Koshnick alleges, the Cities "condoned and ratified" the conduct he alleges violated his constitutional rights, evidencing a "willful, deliberate, malicious, or [] reckless disregard" for such liberties. (Complaint at ¶¶ 25, 26).

Additionally, although the Cities devote considerable discussion to arguing for dismissal on the basis that Koshnick insufficiently pleaded a "failure to adopt policy" (Lakeway Mot. at 7–8; Bee Cave Mot. at 9–10), Koshnick did not assert this as an independent basis for his 1983 claim. Where the Complaint alleges that the Cities "failed to enact and enforce" procedures to prevent the police officers' conduct, it was within the context of alleging that the Cities effectively condoned this conduct by: enacting policies that enabled the conduct; failing to enforce policies that would have prevented this conduct (even if the Cities had such policies in place); or ratifying the conduct by failing to condemn it. (Complaint at ¶¶ 12–13; 23–36).

**E.   Alternatively, Koshnick asks for leave to amend his complaint to address any defects this Court observes in his pleadings.**

As noted in detail above, Koshnick has adequately pleaded claims for municipal liability against the Cities. However, if this Court perceives some deficiency in Koshnick's complaint, he respectfully requests leave to amend his complaint.

Federal Rule of Civil Procedure Rule 15(a) mandates that "'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.  Thus, leave should be given unless some combination of the following factors weighs heavily against amendment: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failures to cure deficiencies by prior amendment; (4) undue prejudice to the opposing party; and (5) the futility of the amendment.  *See U.S. ex rel. Hebert v. Dizney*, 295 Fed. App'x 717, 724 (5th Cir. 2008).  Here, none of these factors are present, particularly given that it is Koshnick's original Complaint that the Cities seek to dismiss. Accordingly, if Koshnick's allegations are deficient in some respect, he asks the Court for leave to amend his Complaint.

## III.    CONCLUSION

Koshnick's allegations of the Cities' police officers' conduct and the Cities' conduct he alleges violates Section 1983 — taken together with his elaboration on the events that led to his constitutional, physical, mental, and emotional injury — satisfy the pleading standards for a municipal liability claim. These allegations permit the court to infer more than the mere possibility of misconduct and give the Cities fair notice of the nature of the claims against them and the grounds on which these claims rest. Accordingly, Koshnick properly pleaded his Section 1983 claims for injuries resulting from Lakeway and Bee

Cave police officers' excessive use of force based on the Cities' official policies, customs, or practices, and the Cities' failure to hire, train, and supervise its police officers.

Moreover, Koshnick was not required to follow Texas' procedures for service of citation, thus, the timely filed Complaint is not subject to a limitations defense. Finally, Koshnick's Complaint never asserted punitive damages, so the Cities' argument that his claim is barred "to the extent Plaintiff asserts a claim for punitive damages" provides no additional basis on which to support Rule 12(b)(6) dismissal of Koshnick's claims.

## IV.    PRAYER

For these reasons, Mark Koshnick respectfully requests that the City of Lakeway and the City of Bee Caves' motions to dismiss be denied in their entirely.  Alternatively, to the extent this Court believes that Koshnick's Complaint is lacking in any regard, he requests that he be given an opportunity to amend, as appropriate.  Koshnick further requests such other relief to which he may be justly and equitably entitled.

Respectfully submitted,

By:_____/s/_____
**Brian C. Steward**
State Bar No. 19201100
Bbrian@krwlawyers.com
KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas 78232
Telephone:    (210) 490-7402
Facsimile:  (210) 490-8372

And

**Thad Spalding**
State Bar No. 00791708

tspalding@kdplawfirm.com
**KELLY, DURHAM & PITTARD, LLP**
P.O. Box 224626
Dallas, Texas 75222
Telephone:      (214) 946-8000
Facsimile:      (214) 946-8433

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

     I hereby certify that on **December 12, 2017**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

**Archie Carl Pierce**
cpierce@w-g.com
**Mike Thompson, Jr**.
mthompson@w-g.com
**Christopher A. Shuley**
cshuley@w-g.com
**WRIGHT & GREENHILL, P.C.**
900 Congress Avenue, Suite 500
Austin, Texas 78701

**ATTORNEYS FOR DEFENDANTS, CITY OF LAKEWAY
AND CITY OF BEE CAVE**

                 /s/_____
                 **Brian C. Steward**
                 **Thad D. Spalding**